**REDACTED VERSION**

CORRECTED

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

Receipt number AUSFCC-6709514

|  |  |  |
|---|---|---|
| | * | |
| | * | |
| TRAILBOSS ENTERPRISES, INC., | * | |
| | * | |
| Plaintiff, | * | Case No.  21-11C |
| | * | |
| v. | * | ███████████████████ 1 |
| | * | |
| THE UNITED STATES OF AMERICA, | * | |
| | * | |
| Defendant. | * | |
| | * | |

## COMPLAINT

For its Complaint against the United States of America, Plaintiff Trailboss Enterprises, Inc.

("Trailboss"), by and through undersigned counsel, alleges as follows:

## I.   INTRODUCTION

1.       This is a post-award bid protest against the United States, acting through the

U.S. Department of Homeland Security, Immigration & Customs Enforcement (the "Agency"),

seeking declaratory judgment and injunctive relief.

2.       This bid protest challenges the Agency's arbitrary, capricious, irrational, and

unreasonable decision to award Contract No. 70CDCR20D00000017 (the "Contract") to

G4S Secure Solutions (USA), Inc. ("G4S") for detainee transportation and protection services to

be performed in the San Antonio, Texas region and surrounding areas.

---

[1] In accordance with Appendix C of the Rules of the United States Court of Federal Claims
("RCFC"), Trailboss is contemporaneously filing with this Complaint a Motion for Leave to File
Under Seal and a Motion for Protective Order.  *See* RCFC, App'x. C §§ III, VI.

3.      The Agency awarded the Contract to G4S after conducting a full-and-open competitive procurement identified as Request for Proposal No. 70CDCR20R00000005 (the "Solicitation").

4.      As explained in further detail in Section V below, the Agency failed to conduct this procurement in accordance with ground rules established by the Solicitation and applicable procurement law.  In summary, this bid protest alleges:

a.      The Agency failed to adequately evaluate Trailboss's Technical Approach and Management Approach volumes, in plain contradiction of the Solicitation's evaluation criteria. Each of the Agency's negative evaluation conclusions concerning Trailboss's proposal reflect the application of unstated evaluation criteria, are factually flawed, or were otherwise patently arbitrary and unreasonable.  The Agency's flawed evaluation unreasonably resulted in Trailboss receiving "Low Confidence" ratings for both volumes, instead of "High Confidence" ratings;

b.      The Agency failed to evaluate G4S's Cost/Price volume for price consistency as required by the Solicitation's stated evaluation criteria.  Consequently, the Agency irrationally awarded the Contract to G4S without evaluating the potential risks posed by the incongruence between G4S's low proposed price and its Technical Approach and Management Approach volumes;

c.      The Agency engaged in disparate treatment in evaluating Trailboss's Technical Approach and Management Approach volumes, resulting in the irrational identification of deficiencies and significant weaknesses for technical approaches proposed by Trailboss that were materially indistinguishable from other offers; and

d.   Due to the significant and cumulative evaluation errors, the Agency's decision to award the Contract to G4S was the result of an irreconcilably flawed best value trade-off source selection decision.

5.   For the reasons set forth herein, Trailboss respectfully requests that the Court: (i) declare the Agency's evaluation of Trailboss's proposal was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (ii) declare the Agency's evaluation of G4S's proposal was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (iii) declare that the Agency engaged in disparate treatment with respect to its evaluation of Trailboss's proposal when compared against the Agency's evaluation of other offeror's proposals; (iv) direct the Agency to terminate for convenience the Contract, reevaluate quotations in accordance with the Solicitation's evaluation criteria, and make a new award decision; (v) permanently enjoin the Agency and G4S from continuing performance of the Contract pending a reevaluation of quotations in accordance with the Solicitation and applicable procurement law; and (vi) direct the Agency to reevaluate quotations in accordance with the Solicitation and applicable procurement law, and award the contract to the offeror that represents the best value.

6.   If a permanent injunction is not issued by the Court to this effect, Trailboss will be irreparably harmed because it will have been deprived of the opportunity to fairly compete for the contract award at issue.  Furthermore, Trailboss will be deprived of the profits associated with performing the subject work.  The balance of the harms and public interest also weigh in favor of injunctive relief.

7.   As explained below, this procurement was previously the subject of a bid protest proceeding before the Government Accountability Office ("GAO").  *See Trailboss Enters., Inc.*,

3

B-419209, Dec. 23, 2020, 2021 CPD ¶ ___. Based upon a limited procurement record produced by the Agency, GAO denied Trailboss's bid protest on December 23, 2020.

## II. PARTIES

8.      Plaintiff Trailboss Enterprises, Inc. is an Alaska corporation with its principal place of business located in Fort Worth, Texas. As the incumbent contractor successfully performing the subject work for the prior eight years, Trailboss leveraged its expertise to submit a proposal offering a comprehensive approach to meet and exceed the needs of the Agency at a competitive price.

9.      The Defendant is the United States of America, acting through the U.S. Department of Homeland Security, Immigration & Customs Enforcement.

## III. JURISDICTION AND VENUE

10.      The United States Court of Federal Claims possesses jurisdiction over this post-award bid protest action pursuant to the Tucker Act, 28 U.S.C. § 1491(b), as amended by the Administration Disputes Resolution Act. In relevant part, the Tucker Act states that this Court "shall have jurisdiction to render judgment on an action by an interested party objecting to . . . a proposed award or the award of a contractor or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *Id*.

11.      Trailboss is an "interested party" to pursue this post-award bid protest because it was an actual offeror who timely submitted a fully compliant proposal in response to the Solicitation and, but for the Agency's erroneous and flawed evaluation process, Trailboss would have had a substantial chance of receiving award of the Contract. *See* 28 U.S.C. § 1491(b)(1); *see also Impresa Construzioni Gemo. Domenico Garufi v. United States*, 238 F.3d 1324, 1334

(Fed. Cir. 2001) (citing *Alfa Laval Separation, Inc. v. United States*, 175 F.3d 1365, 1367 (Fed. Cir. 1999)).

      12.    Venue for this post-award bid protest action is proper in the United States Court of Federal Claims pursuant to 28 U.S.C. § 1491.

## IV.   **FACTUAL ALLEGATIONS**

### A.   **Trailboss's Performance of the Incumbent Contract**

      13.    Commencing on or about June 2012, Trailboss began a documented history of successfully performing the subject detainee transportation services under two sequential incumbent contracts.

      14.    On or about May 12, 2012, the Agency awarded to Trailboss Contract No. HSCEDM-12-D-00005 for a total contract value of ▮▮▮▮▮▮. Under this predecessor contract, Trailboss performed detainee transportation and protection services on behalf of the Immigration and Customs Enforcement ("ICE"), Enforcement and Removals Operations ("ERO"), San Antonio Field Office ("SNA") from June 1, 2012 to July 31, 2018.

      15.    On or about May 18, 2018, the Agency awarded Trailboss a follow-on contract, Contract No. 70CDCR18D00000002, for a total contract value of ▮▮▮▮▮▮. Trailboss is currently performing detainee transportation and protection services on behalf of the ERO SNA under this incumbent contract, which commenced on or about June 1, 2018.

      16.    In its performance of the two prior incumbent contracts, Trailboss successfully transported detainees for over eight years. During that time, Trailboss operated over 80 company-owned vehicles, transported an annual average of more than 350,000 detainees, and traveled over 8,000,000 miles while performing the required transportation services.

**B.**     <u>The Solicitation</u>

17.     The Agency published the Solicitation on or about June 2, 2020, seeking proposals "for Transportation Guard Services in San Antonio, Texas, and surrounding areas." Solicitation at § B.1. The Solicitation contemplated a two-phased, Federal Acquisition Regulation ("FAR") Part 15 competitive procurement utilizing a best-value tradeoff source selection procedures. *See id.* at § M.5.

18.     The Solicitation contemplated the award of a "Firm-Fixed Price/Labor Hour Indefinite Delivery/Indefinite Quantity" type contract. *See id.* at § L.2.

19.     The Solicitation described the procurement as seeking proposals to fulfill "mission critical" services on behalf of the Agency, with the resulting contract to "provide 24/7/365 on-demand transportation services throughout the ERO SNA [Area of Responsibility ("AOR")] and surrounding states. *See* Solicitation at § B.1.

20.     Following the initial publication, the Agency amended the Solicitation four separate times. On July 13, 2020, the Agency published Amendment No. 0004, representing a final, conformed amendment to the Solicitation.

**i.**     **Phased Procurement Process**

21.     The Solicitation set forth a two-phased proposal process, in which Phase I consisted of the Agency conducting a Corporate Experience Interview with each prospective offeror, and Phase II contemplated the submission of written proposals and the Agency's evaluation of the remaining evaluation factors. *See id.* at § L.5.

22.     During Phase I, the Solicitation required offerors to submit a Corporate Experience Questionnaire and participate in a 30 to 40 minute phone interview discussing, *inter alia*,

the offeror's performance of recent contracts that were similar in size and scope to the instant Solicitation. *See id*. at § L.5(3).

23. The Solicitation noted that the "purpose of a phased evaluation approach is to reduce the time and cost of source selection, both for the Government and for the competing Offerors." *Id*. at § M.4. Specifically, the Solicitation advised offerors that, based upon the Phase I interview, "an advisory down-select notification will then be issued by the Government, whereby Offerors will be advised whether they are encouraged to participate in Phase II." *Id*. Nevertheless, the Solicitation invited all offerors who participated in Phase I to submit a Phase II proposal regardless of Agency's advisory down-select notice. *See id*.

24. For offerors encouraged to submit a Phase II proposal, the Solicitation required the submission a written proposal consisting of three volumes: (i) Volume II – Technical Approach and Management Approach Proposals; (ii) Volume III – Past Performance Proposal; and (iii) Volume IV – Price/Cost Proposal. *See id*. at § L.5(4).

25. Under the Technical Approach proposal of Volume II, the Solicitation required each offeror to submit a narrative description detailing: (i) a technical approach to meet or exceed the Transportation Services specified in the Performance Work Statement ("PWS"), which demonstrates a full understanding of all elements of the technical requirements; (ii) a description of the web-based service portal; (iii) a description of the proposed vehicles that will be used to meet the requirements of the PWS; (iv) an approach to minimize and promptly stop any significant disruption of normal procedure; (v) a Transition-In Plan that demonstrated their ability and readiness to complete the mobilization tasks required before full Contract performance; and (vi) a Quality Control Plan. *See id*. at § L.7(4)(1).

7

26.     Under the Management Approach proposal of Volume II, the Solicitation required offerors to submit a narrative description which: (i) demonstrated the proposed process for each offeror's management to ensure the PWS requirements are met and maintained; (ii) included a Staffing Plan that demonstrated a clear understanding of how staffing elements relate to the Solicitation requirements and successful Contract performance; and (iii) provided resumes for the key personnel positions required by the Solicitation. *See id.* at § L.7(4)(2).

27.     Under Volume III – Past Performance, the Solicitation required offerors to "provide information for no more than three (3) recent and relevant contracts in which they served as the prime contractor or subcontractor for services of at least one (1) year in duration, with the same or similar size, scope, and complexity where the period of performance performed at least in part within five (5) years of the current requirement's solicitation closing date." *Id.* at § L.7(5).

28.     Finally, with respect to Volume IV – Price/Cost, the Solicitation required offerors to submit with their proposal a completed Attachment 10 – Pricing Template. *See id.* at § L.7(6). The Solicitation specifically advised:

> An Offeror's proposal is presumed to represent the Offeror's best efforts to respond to the Solicitation. Any inconsistency, whether real or apparent, between proposed technical performance of the requirements and proposed prices should be explained in the proposal.

> Furthermore, the services that are priced in the price proposal must be consistent with the services that are described in the other volumes of the proposal. Inconsistency, if unexplained, raises a fundamental issue regarding the Offeror's understanding of the nature and scope of the work required and the Offeror's ability to perform the objectives of the Solicitation.

*Id.*

8

### ii. Evaluation Factors

29.     The Solicitation advised offerors that the "Government will evaluate all factors based on the criteria in Section M – Evaluation Factors for Award." *Id.* at § M.7.  The Solicitation required the Agency to award the Contract to the offeror whose proposals represented the best value to the Government based upon an integrated assessment of the following evaluation factors: (i) Factor 1: Corporate Experience Questionnaire/Interview; (ii) Factor 2: Technical Approach; (iii) Factor 3: Management Approach; (iv) Factor 4: Past Performance; and (v) Factor 5: Price/Cost. *See id.*

30.     The Solicitation set forth the following Evaluation Factors for each of the individual Evaluation Factors:

#### a. Corporate Experience Questionnaire/Interview

31.     Under the Corporate Experience Questionnaire/Interview Factor, the Solicitation required the Agency to "evaluate how the Offeror's responses to the Government's questions, including any follow-up questions, demonstrates (sic) the Offeror's experience providing similar services as required in the PWS and RFP." *Id.*

#### b. Technical Approach

32.     Under the Technical Approach Factor, the Solicitation required the Agency to "evaluate the Offeror's demonstrated understanding of all elements of the technical requirements described in the RFP, the soundness and technical ability of the proposed technical approach, and the validity of the proposed methodology to meet the requirements of the solicitation." *Id.*

#### c. Management Approach

33.     Under the Management Approach Factor, the Solicitation required the Agency to "evaluate how the offeror's proposed management approach will ensure requirements of this

solicitation will be met and maintained at an acceptable level." *Id*. The Solicitation provided that the Agency would "evaluate the offeror's staffing procedures, staffing elements, and Staffing Plan, and how they demonstrate the Offeror's understanding of how staffing relates to the solicitation requirements and successful contract performance." *Id*.

### d. Past Performance

34. Evaluation of the Past Performance Factor would include a review of offerors' recent and relevant past performance. *See id*. The Solicitation provided that the "past performance evaluation will be used as a means of determining the probability of the Offeror to meet the performance requirements of the proposed contract." *Id*.

### e. Price/Cost

35. With regard to the Price/Cost Factor, the Solicitation required the Agency to conduct its price analysis using one or more of the techniques specified in FAR § 15.404-1(b). *See id*.

36. The Solicitation further provided that the Price/Cost volume would not receive an adjectival rating , but would be considered a factor in the best-value tradeoff determination. *See id*.

37. Importantly, the Solicitation required the Agency to compare the Price/Cost volume to the Technical Approach/Management Approach/Plans for consistency. *See id*. To that end, the Solicitation stated: "Each price will be validated by examining the accuracy and consistency of the information presented in the proposal. Discrepancies will be noted and provided to the Source Selection Authority and Contracting Officer." *Id*.

38.     In addition, the Solicitation further provided that proposals would be evaluated for price completeness, balance, and reasonableness:

- Completeness: All information/data required by the RFP has been submitted, correlates to the requirement, and supports the offer.
- Balanced: Pricing that is not determined to be unbalanced pricing in accordance with FAR 15.404-1(g).
- Reasonableness: Prices are considered fair and reasonable under current market conditions and reasonable to the Government.

*See id.*

39.     The concept of consistency between the price and non-price volumes is further established in Section L of the Solicitation, which states:

[T]he services that are priced in the price proposal must be consistent with the services that are described in the other volumes of the proposal. Inconsistency, if unexplained, raises a fundamental issue regarding the Offeror's understanding of the nature and scope of the work required and the Offeror's ability to perform the objectives of the Solicitation.

*Id.* at § L.7(6).

40.     Ultimately, the Solicitation warned offerors that "[p]roposals which fail to meet solicitation requirements or do not demonstrate a technical understanding of the requirements or schedule may be deemed to be reflective of an inherent lack of technical competence, or indicative of a failure to comprehend the complexity and risks of the proposed work and may be grounds for rejection." *Id.* at M.5(5.3).

### iii.     Adjectival Ratings and Definitions

41.     For the purposes of evaluating each offeror's respective proposal, the Solicitation set forth separate adjectival ratings for each of the above-referenced evaluation factors.

42.     The Solicitation advised offerors that the Agency intended to evaluate Factors 1-3, Corporate Experience Interview, Technical Approach, and Management Approach, as follows:

"The Government will consider the Offeror's approaches and the risks associated with the approaches proposed by the Offeror to arrive at a confidence assessment of the Offeror's likelihood of successfully performing the work and meeting the RFP objectives." *Id.* at § M.5(5.1).

43.     The Solicitation set forth the following adjectival ratings relative to the Agency's evaluation of Factors 1-3:

| High Confidence | The Government has high confidence that the Offeror understands the requirement, proposes a sound technical approach, and will be successful in performing the requirement. |
|---|---|
| Some Confidence | The Government has some confidence that the Offeror understands the requirement, proposes a sound technical approach, and will be successful in performing the requirement. |
| Low Confidence | The Government has low confidence that the Offeror understands the requirement, proposes a sound technical approach, and will be successful in performing the requirement. |

*Id.*

44.     With regard to Factor 4, Past Performance, the Solicitation stated the Agency intended to evaluate the "relevant quantitative and qualitative aspects of each Offeror's record of performing services or delivering products similar in size, scope, and complexity to the requirements of the current acquisition." *Id.*

45.     Similar to Factors 1-3, the Solicitation stated the Agency would evaluate each offeror's past performance references to determine the "Government's level of confidence in the Offeror's ability to perform the solicitation requirements." *Id.*

46.     The Solicitation reflected the following adjectival ratings relative to the Agency's evaluation of Factor 4:

12

| High Confidence | Based on the Offeror's recent (NLT 5 years from solicitation closing date), relevant (similar in size, scope and complexity to this effort), and performance record, the Government has a high expectation that the Offeror will successfully perform. |
| --- | --- |
| Some Confidence | Based on the Offeror's recent (NLT 5 years from solicitation closing date), relevant (similar size, scope and complexity to this effort), and performance record, the Government has a reasonable expectation that the Offeror will successfully perform. |
| Low Confidence | Based on the Offeror's recent (NLT 5 years from solicitation closing date), relevant (similar in size, scope and complexity to this effort), and performance record, the Government has a low expectation that the Offeror will successfully perform. |
| Unknown Confidence | The Offeror does not have recent (NLT 5 years from solicitation closing date), relevant (similar in size, scope and complexity to this effort), or any performance record; or the Offeror's performance record is so sparse, a meaningful confidence rating cannot be reasonably assigned. |

*Id.*

47.     Finally, with regard to the evaluation of Factors 1-4, the Solicitation stated that the

Agency "may consider relative strengths, deficiencies, significant weaknesses, and weaknesses."

*Id.* at § M.5(5.2).  The Solicitation set forth the following definitions:

| Strength | A material aspect of the proposal to meet a Government requirement that increases the Government's confidence of successful contract performance. |
| --- | --- |
| Significant Weakness | A flaw in the proposal that appreciably increases the risk of unsuccessful contract performance. |
| Weakness | A flaw in the proposal that increases the risk of unsuccessful contract performance. |
| Deficiency | A material failure of a proposal to meet a Government requirement or a combination of significant weaknesses in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level. |

*Id.*

#### iv.    Basis for Award

48.    According to the Solicitation, the Agency intended to award the resulting contract to the best-value offeror. *See id*. at § M.5 ("The [Source Selection Authority], using sound business judgment, will base the selection decision on an integrated assessment of the Offeror's relative capability as measured against the evaluation factors identified in this Section M.").

49.    The Solicitation cautioned offerors, however, that:

> Proposals which fail to meet solicitation requirements or do not demonstrate a technical understanding of the requirements or schedule may be deemed to be reflective of an inherent lack of technical competence, or indicative of a failure to comprehend the complexity and risks of the proposed work and may be grounds for rejection.

*Id*. at § M.5(5.3).

50.    In order to reach a best-value determination, the Solicitation described the relative importance of the evaluation factors:

> The Corporate Experience Interview will be assigned a confidence rating. Once Factor 1 is evaluated, no further relative importance shall be assigned to the factor.
>
> Factors 2 – 5 are listed in descending order of importance. When combined, Factors 2-4 are significantly more important than Factor 5, Price.
>
> As the technical merits of competing proposals become comparable, price will become more important in any trade off decision. Notwithstanding the above, proposals may be removed from competition if they receive an overall "Low Confidence" rating in any non-price factor (Factors 2-4).

*Id*. at § M.6.

#### C.    <u>Trailboss's Proposal Submission</u>

51.    On June 10, 2020, Trailboss submitted its request to the Agency to schedule the Phase I Corporate Experience Interview.   The Agency conducted the Corporate Experience

Interview on June 15, 2020, and on June 24, 2020, the Agency notified Trailboss that it was selected to participate in Phase II.

52.      Trailboss submitted its Phase II proposal on July 29, 2020. *See generally* Trailboss Proposal. Trailboss's proposal complied in all respects with the Solicitation, and contained three separate volumes: (i) Technical Approach and Management Approach; (ii) Past Performance; and (iii) Price/Cost. The Proposal featured a comprehensive approach to meet and exceed the requirements of the Solicitation, leveraging Trailboss's extensive experience providing detainee transportation services on the prior incumbent contracts.

53.      Trailboss submitted a total proposed price of $164,624,457.83, which represented a fair, reasonable, balanced, and consistent price based upon Trailboss's extensive history of successfully helping the Agency execute its mission. Trailboss's proposal offered significant advantages to the Agency, and as explained below, represented the best-value.

**D.      Contract Award and Debriefing**

54.      On September 17, 2020, the Agency notified Trailboss of its decision to award the Contract to G4S for a total price of $137,040,514.52. *See* Notice of Unsuccessful Offeror at 1.

55.      The Agency's Notice of Unsuccessful Offeror further informed Trailboss that G4S "was selected because its proposal provided the best value to the government." *Id*.

56.      The Notice of Unsuccessful Offeror reflected G4S's total proposed price submitted in response to the Solicitation over the period of performance:

| Contract #- 70CDCR20D00000017 | Period of Performance | Total Amount |
|---|---|---|
| Base Period | 09/25/2020 – 09/24/2021 | $1,260,214.73 |
| Option Year 1 | 09/25/2021 – 09/24/2022 | $19,361,272.71 |
| Option Year 2 | 09/25/2022 – 09/24/2023 | $29,066,391.72 |
| Option Year 3 | 09/25/2023 – 09/24/2024 | $29,091,334.80 |
| Option Year 4 | 09/25/2024 – 09/24/2025 | $29,117,225.40 |
| | **Total Contract Value** | **$137,040,514.52** |

57.     The Agency assessed the following adjectival ratings to Trailboss's and G4S's respective proposals under the applicable Evaluation Factors:

| Name of Offeror | Factor 1 – Corporate Experience | Factor 2 – Technical Approach | Factor 3 – Management Approach | Factor 4 – Past Performance | Factor 5 - Price[1] |
|---|---|---|---|---|---|
| Trailboss | High Confidence | Low Confidence | Low Confidence | High Confidence | $164,624,457.83 |
| G4S | High Confidence | High Confidence | High Confidence | High Confidence | $137,040,514.52 |

58.     Following receipt of the Notice of Unsuccessful Offeror, Trailboss timely requested a post-award debriefing in accordance with FAR § 15.506(a)(1).

59.     The Agency transmitted its written post-award debriefing to Trailboss by email on September 23, 2020. *See generally* Trailboss Post-Award Debriefing (the "Debriefing").

60.     The Debriefing set forth the following evaluation conclusions regarding Trailboss's proposal:

**i. Technical Approach Volume**

61.     According to the Debriefing, the Agency's evaluation of Trailboss's Technical Approach volume resulted in the identification of four strengths, two weaknesses, one significant weakness, and two deficiencies:

a.



16



b. 

c. 

d. <u>Deficiencies</u>:

- Per Section L.7(4)(1), the offeror shall, "provide a detailed description of the proposed web-based service portal, including how the system addresses performance, scheduling, dispatch, and ensures compliance with the required standards". The offeror did not detail the capabilities

17

of the portal, beyond receipt of missions and the G-391 process. The vendor does not address performance, scheduling, dispatch or how the system will comply with the standards. This is a large risk as the evaluators cannot assume or bring in outside knowledge, only evaluating what is presented in the proposal.

▪ The proposal does not provide any detail on how it meets ICE information technology security requirements. Only that it does, with no supporting documentation or explanation. Per Section M3 of the RFP, "offerors shall assume that the government has no prior knowledge of their experience and will base its evaluation on the information presented in the offeror's proposal." The evaluation team cannot just take the offeror's word and cannot assume information outside what is presented in the proposal.

*Id.* at 7-9, 11.

### ii. Management Approach Volume

62. In addition, the Debriefing indicated the Agency's evaluation of Trailboss's Management Approach volume resulted in the identification of three significant weaknesses:

a.





*Id.* at 12-16.

### iii. Price/Cost Volume

63.     The Debriefing finally reflected that the Agency considered Trailboss's total proposed price "of $164,624,457.83 was found to be fair, reasonable, and balanced in accordance with FAR 15.404 1(b)(2)(i), FAR 15.404-1(b)(2)(ii), and FAR 15.404-1(b)(2)(v)." *Id*. at 18.

64.     The Debriefing did not indicate, however, that the Agency evaluated Trailboss's Price/Cost volume for price consistency as required by Section M of the Solicitation.

### E.   Trailboss's GAO Bid Protest

65.     On September 28, 2020, Trailboss timely commenced a post-award bid protest before the GAO challenging the Agency's decision to award the Contract to G4S.  GAO docketed the bid protest as GAO Docket No. B-419209.



66.     In accordance with GAO Bid Protest Regulations, the Agency filed its Agency Report on October 28, 2020, in response to Trailboss's bid protest allegations.

67.     The Agency produced a limited Agency Report, taking an unreasonably narrow view of the arguments raised in Trailboss's GAO bid protest. For example, the Agency withheld all technical and price proposal documents relating to G4S, including the Agency's evaluation thereof, despite the fact that Trailboss's arguments clearly put G4S's technical and price proposal at issue. Moreover, the Agency substantially redacted the Source Selection Decision Document ("SSDD") and evaluation materials.[2]

68.     The Agency's overly aggressive efforts to limit document production significantly impaired GAO's bid protest process.

69.     In its bid protest before GAO, Trailboss asserted, *inter alia*, that: (1) the Agency conducted a flawed evaluation of Trailboss's Technical Approach and Management Approach proposal, unreasonably resulting in "Low Confidence" ratings instead of "High Confidence" ratings; (2) the Agency failed to evaluate G4S's Cost/Price proposal for completeness and consistency in accordance with the Solicitation's evaluation criteria, resulting in the acceptance of a low proposed price that was not consistent with the proposed technical approach; (3) the Agency engaged in disparate treatment in its evaluation of Trailboss's and G4S's proposal; and (4) the Agency's award decision resulted from a flawed best value trade-off.

---

[2] Due to the inadequacy of the limited Agency Record produced by the Agency during the GAO bid protest proceeding, GAO's decision in the bid protest "lacks persuasive value in this proceeding." *Bluewater Mgmt. Grp., LLC v. United States*, No. 20-1160C, 2020 WL 6733768, at *11 n.16 (U.S. Ct. of Fed. Cl. Oct. 29, 2020).

70. On December 23, 2020, GAO issued a decision denying Trailboss's bid protest. *See Trailboss Enterprises, Inc.*, B-419209, Dec. 23, 2021 CPD ¶ ___. GAO issued a public version of the bid protest decision on December 30, 2020.[3]

71. In denying Trailboss's bid protest, GAO did not specifically address several allegations that the Agency conducted a flawed evaluation of Trailboss's Management Approach proposal, nor did GAO address Trailboss's allegation that the Agency failed to evaluate G4S's Cost/Price Proposal for price consistency.

## V. CLAIMS FOR RELIEF

### COUNT I
**The Agency Failed to Evaluate Trailboss's Proposal in Accordance with the Solicitation**

72. Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

73. It is textbook procurement law that an agency is required to conduct procurements in a manner consistent with the terms of the solicitation and applicable law and regulations. *See*, *e.g.*, *CSE Const. Co., Inc. v. United States*, 58 Fed. Cl. 230, 252 (Fed. Cl. 2003) (sustaining bid protest and awarding costs where Government failed to consider the entirety of protestor's proposal and did not adhere to the applicable law and regulations). The Agency's failure to do so is, by definition, arbitrary and capricious. *Id.*

74. Accordingly, an agency may not consider evaluation criterion that are not stated in the solicitation. *See Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 386

---

[3] A public version of GAO's decision may be retrieved electronically at the following website: https://www.gao.gov/products/B-419209.

(Fed. Cl. 2003) ("It is hornbook law that agencies must evaluate proposals and make awards based on the criteria stated in the solicitation."), *aff'd*, 365 F.3d 1345 (Fed. Cir. 2004).

75.     In this procurement, the Debriefing demonstrated that the Agency conducted a flawed evaluation of Trailboss's Technical Approach and Management Approach volumes, which unreasonably resulted in a "Low Confidence" rating for both volumes, instead of "High Confidence" ratings.

76.     Without exception, each of the negative evaluation conclusions disclosed to Trailboss in the Debriefing reflected the application of unstated evaluation criteria, are factually flawed, or otherwise are patently arbitrary and unreasonable.

77.     The Solicitation required the Agency to consider the many strengths of Trailboss's proposal, and with the elimination of the flawed negative evaluations, the technical strength of Trailboss's proposal placed it comfortably in the "High Confidence" category.

78.     Had the Agency properly evaluated the Technical Approach proposal in accordance with the Solicitation's evaluation criteria, and with the removal of the arbitrary and irrational negative evaluation conclusions, Trailboss's proposal clearly would have merited a rating of "High Confidence" rating under the Technical Approach evaluation factor.

79.     Similarly, had the Agency conducted a proper evaluation in accordance with the Solicitation, Trailboss's proposal clearly would have merited a rating of "High Confidence" under the Management Approach evaluation factor.

80.     The Agency's arbitrary and selective deviation from the requirements of the Solicitation during its evaluation of Trailboss's proposal competitively prejudiced Trailboss. This is because, absent the Agency's erroneous and unsupported evaluation judgments described above,

the Agency would have awarded the contract to Trailboss. Therefore, this protest ground should be sustained on the merits.

**COUNT II**
**The Agency Failed to Evaluate Proposals for Price Consistency**

81.      Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

82.      It is well settled that this Court will set aside contract awards where the procuring agency unreasonably deviates from the solicitation's evaluation criteria. *See Lab. Corp. of Am. Holdings v. United States*, 116 Fed. Cl. 643, 651-52 (2014) (granting permanent injunction against the Government following an irrational price evaluation) (citing *Banknote Corp. of Am., Inc.*, 56 Fed. Cl. at 386-87). "When the evaluation of proposals materially deviates from the evaluation scheme described in the solicitation, the agency's failure to follow the detailed plan may constitute evidence of arbitrary and capricious decision-making." *L-3 Comm'ns EOtech, Inc. v. United States*, 83 Fed. Cl. 643, 653-54 (2008).

83.      As explained above, the Solicitation advised offerors that the Price/Cost volume would be evaluated for price consistency. *See* Solicitation at § M.7. The Solicitation unambiguously stated that the "Price/Cost proposal will be compared to the Technical Approach/Management Approach/Plans proposal for consistency." *Id*. Moreover, the Solicitation stated : "Each price will be validated by examining the accuracy and consistency of the information presented in the proposal. Discrepancies will be noted and provided to the Source Selection Authority and Contracting Officer." *Id*.

84.      The sole purpose of this evaluation criterion was to avoid the submission of proposals offering a total proposed price that was untethered to the proposed technical approach.

23

This purpose is evidenced by the Solicitation's incorporation of confidence ratings for the Technical Approach and Management Approach: "The Government will consider the Offeror's approaches and the risks associated with the approaches proposed by the Offeror to arrive at a confidence assessment of the Offeror's likelihood of successfully performing the work and meeting the RFP objectives." *Id*. at § M.5(5.1).

85.     The concept of consistency between the price and non-price volumes is further established in the Instruction to Offerors, which states: "the services that are priced in the price proposal must be consistent with the services that are described in the other volumes of the proposal. Inconsistency, if unexplained, raises a fundamental issue regarding the Offeror's understanding of the nature and scope of the work required and the Offeror's ability to perform the objectives of the Solicitation." *Id*. at § L.7(6).

86.     Ultimately, the Solicitation warned offerors that "[p]roposals which fail to meet solicitation requirements or do not demonstrate a technical understanding of the requirements or schedule may be deemed to be reflective of an inherent lack of technical competence, or indicative of a failure to comprehend the complexity and risks of the proposed work and may be grounds for rejection." *Id*. at M.5.

87.     The Agency's failure to evaluate each offeror's Price/Cost volume for price consistency was particularly noteworthy in light of the Agency's failure to adequately scrutinize whether G4S's proposed price was consistent with its technical proposal. *See* Solicitation at § M.7 (requiring the Agency to compare the Cost/Price proposal with the Technical Approach and Management Approach proposals).

88.     As a result, G4S was, in effect, permitted to "buy" this contract by offering a price that completely underestimated the level of effort required to perform the Contract. Specifically,

24

the record in this procurement demonstrates that G4S significantly understated the level of staffing needed to adequately perform the tasks set forth in the Solicitation and PWS.

89.     The Agency failed to evaluate the Cost/Price volume in accordance with the requirements of the Solicitation. Consequently, the Agency irrationally accepted a low proposed price that was inconsistent with the proposed technical approach. In addition to abandoning a stated evaluation criterion, this error resulted in the Agency awarding the Contract based upon a fundamentally risky proposal that substantially increases the likelihood of poor contract performance.

90.     The effect of the Agency's failure to conduct a price consistency evaluation is particularly prejudicial. Had the Agency conducted a price consistency evaluation as required, it would have understood the risks associated with G4S's low priced proposal. But for this material deviation from the Solicitation, the Agency would have rated G4S's Technical Approach or Management Approach as "Low Confidence," or rejected the proposal outright. Consequently, the Agency would have awarded the contract to Trailboss.

## COUNT III
### The Agency Engaged in Disparate Treatment

91.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

92.     It is a foundational procurement principle that competitions must be conducted on an equal basis, meaning the contracting agency must comply with the terms of the solicitation and treat offerors fairly and equally. *See Hunt Bldg. Co., Ltd. v. United States*, 61 Fed. Cl. 243, 247 (Fed. Cl. 2004), *modified*, 63 Fed. Cl. 141 (Fed. Cl. 2004). "It is well-established that a contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common

25

requirements and evaluation criteria." *CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. 462, 490 (2013) (internal quotations omitted). Such uneven treatment "goes against the standard of equality and fair-play that is a necessary underpinning of the federal government's procurement process and amounts to an abuse of the agency's discretion." *PBGA, LLC v. United States*, 60 Fed. Cl. 196, 207 (citations omitted), *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004); *TLT Constr. Corp. v. United States*, 50 Fed. Cl. 212, 216 (2001) ("A fundamental principle of government procurement is that [the agency must] treat all offerors equally and consistently apply the evaluation factors listed in the solicitation.").

93.     The Agency disparately evaluated Trailboss's proposal when compared against the evaluation of other offeror's proposals. Specifically, the Agency's evaluation of Trailboss's Technical Approach and Management Approach was rife with clearly erroneous negative evaluations.

94.     In some instances, the Agency condemned Trailboss for not addressing certain technical requirements that the Solicitation expressly deferred until after contract award. In several other instances, the Agency concluded that Trailboss's proposal failed to address certain requirements set forth in the Solicitation and PWS, only for that conclusion to fall-apart when compared against the actual text of Trailboss's proposal. The sum of the Agency's irrational evaluation conclusions directly led to the overall rating of "Low Confidence" under both the Technical Approach and Management Approach evaluation factors.

95.     Upon information and belief, other offerors who submitted proposals in response to the Solicitation were not subjected to the same irrational evaluation scrutiny by the Agency. As a result, the Agency improperly applied different ground rules to its evaluation of Trailboss's and other offerors' proposals, in violation of the Solicitation and procurement law.

96.     The Agency's arbitrary and selective compliance with the requirements of the Solicitation against Trailboss resulted in disparate treatment and competitively prejudiced Trailboss. Specifically, the Agency engaged in disparate treatment with respect to the deficiencies and significant weaknesses purportedly identified in Trailboss's proposal. Had the Agency complied with the terms of the Solicitation and treated offerors fairly and equally, the Agency would have awarded Trailboss the contract as the rightful awardee.

**COUNT VI**
**The Agency's Best Value Decision was Irrational**

97.     Plaintiff repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

98.     The Agency's best value tradeoff source selection decision was fundamentally flawed because of the numerous prejudicial errors described above and as evidenced by the procurement record.

99.     But for the Agency's erroneous and unsupported evaluation judgments, the Agency would have awarded the contract to Trailboss. Therefore, this protest ground should be sustained on the merits.

**VI.     PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in its favor and against the Defendant, and grant the following relief:

a.     Declare that the Agency's evaluation of Trailboss's proposal was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

b.     Declare the Agency's evaluation of G4S's proposal was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

27

c. Declare that the Agency engaged in disparate treatment with respect to the deficiencies and significant weaknesses purportedly identified in Trailboss's proposal;

d. Direct the Agency to terminate with convenience the Contract, reevaluate quotations in accordance with the Solicitation, and make a new award decision;

e. Permanently enjoin the Agency and G4S from commencing performance of the Contract pending a reevaluation of quotations in accordance with the Solicitation and applicable procurement law;

f. Direct the Agency to reevaluate quotations in accordance with the Solicitation and applicable procurement law, and award the contract to the offeror that represents the best value;

g. Award Trailboss its attorney fees and costs incurred in pursuing this action, and/or its bid and proposal costs; and,

h. Grant any other relief this Court deems just and proper.

Dated: December 31, 2020

Respectfully submitted,

 *s/ Shaun C. Kennedy*
Shaun C. Kennedy
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202
Telephone: (303) 295-8377
Facsimile: (303) 957-5460
sckennedy@hollandhart.com

*Of Counsel:*

Christopher R. Hogle
Thomas A. Morales
Chris D. Mack
Hannah E. Armentrout
HOLLAND & HART LLP
555 Seventeenth Street, Suite 3200
Denver, Colorado 80202

*Attorney of Record for Plaintiff*
*Trailboss Enterprises, Inc.*

15962857_v1